UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WILBERT JAMES SMITH, | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No.: 5:16-cv-01818-AKK-JHE |
| WARDEN LEON BOLLING, | ) ) ) |
| Respondent. | ) ) |

**MEMORANDUM OPINION**

This is an action for a writ of habeas corpus action filed by petitioner Wilbert James Smith, *pro se*. Doc. 1. Smith challenges his 2013 conviction in Madison County Circuit Court on three counts of capital murder. *Id.* at 2. On November 16, 2018, the magistrate judge entered a report and recommendation pursuant to 28 U.S.C. § 636(b), recommending that habeas relief be denied. Doc. 7. Smith filed timely objections to the report and recommendation. Doc. 10.

Each of Smith's objections is based on his belief that he was denied effective assistance of counsel. To establish ineffective assistance of counsel, a petitioner must demonstrate that his trial attorney's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that the result of the trial would have been different but for the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-92 (1984). The Supreme Court observed

"*Strickland's* first prong sets a high bar. A defense lawyer navigating a criminal proceeding faces any number of choices about how best to make a client's case. The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.' It is only when the lawyer's errors were 'so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment' that *Strickland's* first prong is satisfied." *Buck v. Davis*, 580 U.S. —, 137 S.Ct. 759, 775 (2017) (internal citations omitted). Review of claims of ineffective assistance of counsel under AEDPA are "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (*quoting Strickland*, 466 U.S. at 690; internal quotation marks omitted).

This court must follow the two-step process in applying § 2254(d) set forth in *Harrington v. Richter*, 562 U.S. 86, 102 (2011). *Ray v. Alabama Dep't of Corr.*, 809 F.3d 1202, 1209 (11th Cir. 2016), *cert. denied*, 137 S.Ct. 417 (2016). First, the court must "determine what arguments or theories support . . . the state court's decision;" then the court must consider "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Ray*, 809 F.3d at 1209 (alterations in

original, citations omitted). When the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable. *Wilson v. Sellers*, __ U.S. __, 138 S.Ct. 1188, 1192 (2018). When that state court's decision does not explicitly state those reasons, the federal court must "look through" the unexplained decision to the last related state court decision that does provide a rationale and presume the unexplained decision adopted that rationale. *Id*. Thus, this court considers the petitioner's claims in light of the Alabama Court of Criminal Appeals decision.

Smith first objects to the report and recommendation on his claim that trial counsel was ineffective for failing to object to expert witness testimony about DNA population frequency statistics. Doc. 10 at 4. Specifically, Smith claims his attorney should have "objected to the testimony of State witness Crystal Kissel, DNA expert, and asked her how she had calculated and/or arrived at this enormous phantom number [of one in fifty quadrillion]" because this evidence was prejudicial to him. *Id*. at 5-6. According to Smith, because "there has never existed fifty quadrillion unrelated African Americans . . . [s]uch theory is error and could never be reliable . . . ," *id.* at 6, and, therefore, his attorney erred by not objecting to this testimony. At trial, Crystal Kissel, a scientist with the Alabama Department of Forsensic Sciences, testified that DNA testing from the crime scene

yielded results which did not match either of the victims. Those unknown samples were run through a database to search for matches. Doc. 5-7 at 71. That database search revealed the petitioner as a match for the samples. *Id.*, at 77. Lily S. Harper, also a scientist with the Alabama Department of Forensic Sciences, testified that she analyzed the known sample of DNA taken from Smith, that DNA recovered from the crime scene was a match to Smith, and that the combination of genetic traits in the recovered DNA would occcur in approximately 1.1 quadrillion random unrelated African American individuals.[1] Doc. 5-7 at 101, 103. Smith's argument that because "there has never existed fifty quadrillion unrelated African

---

[1] As recently explained by the Eleventh Circuit,

> DNA is a complex molecule that contains the biological coding of human traits. Within a typical human cell, DNA is wrapped tightly into forty-six chromosomes forming twenty-three pairs. Physical locations (known to scientists as "loci") on one chromosome correspond with physical locations on its paired chromosome; for each locus on a chromosome that influences an attribute, there is a related locus on its paired chromosome that also influences the attribute. The DNA found at these loci are called "alleles," and alleles, like chromosomes, come in pairs. While more than 99% of DNA is identical from person to person, scientists have determined that certain alleles are highly variable between individuals, and have likewise determined the statistical probability of finding those alleles in the greater population. Forensic DNA analysis focuses on these loci and alleles known to vary widely: when a profile of such alleles from a known person is compared to a profile of alleles from an unknown DNA sample, statistical analysis can determine the frequency with which a sample from a random member of the general population would also be a match.

*United States v. Barton*, 2018 WL 6374201, at *2 (11th Cir. Dec. 6, 2018). Thus, the one in 1.1 quadrillion statistic means the chances of one person randomly selected from the population as a whole matching the characteristics of the DNA found here are one in 1.1 quadrillion. Nothing in this statistic actually requires 1.1 quadrillion people to be tested. Or, as the expert in the trial court explained, the population frequency is another way of "saying how many popele would you have to have in a room in order to find two people with that exact same match." Doc. 5-7 at 64.

Americans . . . [s]uch theory is error and could never be reliable," doc. 10 at 6 is based on a misunderstanding of statistical probability. He does not provide any basis to find the state court's decision was based on an error of constitutional law so grave reasonable minds could not agree that it was correct. *See e.g, Harrington*, 562 U.S. at 103; *Wilson v. Warden, Georgia Diag. Prison*, 898 F.3d 1314, 1321 (11th Cir. 2018).

Smith next objects that counsel was ineffective for failing to object to the prosecutor questioning a witness as to whether Smith made a statement after his arrest. Doc. 10 at 7. The record extablished that Smith's counsel did object to questions by the prosecutor along this line, and that the trial court gave a curative instruction. Doc. 5-8 at 79-83. Relying on *Greer v. Miller*, 483 U.S. 756 (1987), the magistrate judge reasoned that trial counsel's immediate objection, combined with the trial court's curative instruction, prevented any constitutional error from occurring. Doc. 7 at 16. Therefore, the Alabama Court of Criminal Appeals' determination that this claim was "meritless" because no testimony concerning the petitioner's post-arrest silence occurred, doc. 5-20 at 12, was not a ruling upon which fairminded jurists could disagree. Smith's objection based on his disagreement with the law does not alter this analysis.

Smith's third objection attacks the magistrate judge's finding that trial counsel was not ineffective in failing to object to the trial court's supplemental jury

instruction on accomplice liability. Doc. 10 at 9. At trial, the jury returned twice to the courtroom with questions regarding the jury instruction on accomplice liability. Doc. 5-9 at 59-67, 69-74. Relying on § 12-21-222, *Alabama Code 1975*, as amended, Smith argues that the trial court deprived him of a correct statement of law, and therefore the Alabama Court of Criminal Appeals erred in its determination that his counsel was not deficient. Doc. 10 at 9-10. The Alabama appellate court noted the jury instruction given on accomplice liability mirrored that in the *Alabama Pattern Jury Instructions*, doc. 5-20 at 14, and found that "no evidence . . . support[ed] the assertion that Smith procured or induced another into committing the offense . . . . Consequently, trial '[c]ounsel is not ineffective for failing to raise a baseless claim.'" *Id*. (citations omitted). The petitioner fails to demonstrate this state court decision applied law contrary to that established by the Supreme Court, or applied the law in an objectively unreasonable manner. *See e.g., Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

Smith objects to the finding that trial counsel did not err in not objecting to the trial court excusing a potential juror. Doc. 10 at 10. This objection challenges the trial court's decision to excuse three potential jurors from the venire: a juror who had a nephew who had been murdered recently, a juror who suffered from anxiety, and a juror who failed to return after a break. *Id*. at 11. While Smith contends that his trial counsel acted ineffectively in agreeing to the release of these

6

venire members, Smith fails to provide any evidence as to how this was error by counsel.

Considering this claim on its merits, the Alabama Court of Criminal Appeals held

> Smith has not alleged any facts that, if true, would establish that his counsel's performance was deficient or could not have been justified as a strategic decision. *Strickland*, 44 U.S. at 689. Further, Smith also failed to plead any facts that, if true, would demonstrate that there is a reasonable probability that, but for his trial counsel's failure to object to the trial court's excusal of prospective jurors P.H. and K.R., the result of his trial would have been different. *Id. See also Boyd v. State,* 913 So. 2d 1113, 1133 (Ala.Crim.App. 2003) (holding that a bare assertion of the appellant's subjective opinion that counsel should have performed differently is insufficient to satisfy the pleading requirements of Rule 32.6(b), Ala. R. Crim. P.).

Doc. 5-20 at 15. This decision was neither contrary to, nor an unreasonable application of clearly established federal law, and it was not based on an unreasonable determination of the facts in light of the evidence presented. As noted by the magistrate judge, strategic decisions by counsel in selecting a jury only provide a basis for a claim of ineffective assistance of counsel where "counsel's decision is . . . so ill-chosen that it permeates the entire trial with obvious unfairness." Doc. 7 at 20 (*quoting Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001).

Finally, Smith objects to the magistrate judge's finding that trial counsel was not ineffective for not objecting to the withholding of exculpatory evidence. Doc.

10 at 12. The evidence in question is the fingerprints of other individuals who were in the home where the murders occurred. According to Smith, he could have used this evidence to demonstrate that other individuals committed the murders. *Id*. at 13. The Alabama Court of Criminal Appeals rejected this argument, holding that Smith "failed to plead any facts indicating how this evidence was exculpatory, favorable, or material." Doc. 5-20 at 19. The court finds nothing in this statement "involved an unreasonable application of . . . clearly established Federal law . . . ." *Nevada v. Jackson*, 569 U.S. 505, 508 (2013) (*quoting* 28 U.S.C. § 2254(d)(1)). It certaininly does not reflect an error of existing law so well understood that it is "beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. at 103.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the magistrate judge's Report and Recommendation and Smith's objections thereto, the magistrate judge's findings are due to be and are hereby **ADOPTED**, and his recommendation is **ACCEPTED**. Smith's objections are **OVERRULED**. Accordingly, the petition for writ of habeas corpus is due to be **DENIED** and **DISMISSED WITH PREJUDICE**. Further, because the petition does not present issues that are debatable among jurists of reason, a certificate of appealability is also due to be **DENIED**. *See* 28 U.S.C. § 2253(c);

*Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); Rule 11(a*), Rules Governing § 2254 Proceedings*. A separate Final Order will be entered.

**DONE** the 18th day of December, 2018.

*/s/ Abdul Kallon*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE